# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEFF SMALL, | : | | |
| *Individually and On Behalf of All Others* | : | | |
| *Similarly Situated*, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-955 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 11, 12 |
| | : | | |
| VANDA PHARMACEUTICALS INC. *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| | : | | |
| TUAN HOANG, | : | | |
| *On Behalf of Himself and All Others Similarly* | : | | |
| *Situated*, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-1028 (RC) |
| | : | | |
| v. | : | Re Document No.: | 6 |
| | : | | |
| VANDA PHARMACEUTICALS INC. *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### Granting Motion to Consolidate Cases; and
### Appointing Lead Plaintiff and Lead Counsel

## I. INTRODUCTION

Before the Court are the motions of two movants, each seeking to be appointed as lead

plaintiff and to have their counsel appointed lead counsel, in a putative securities fraud class

action brought under the Securities Exchange Act of 1934, as amended by the Private Securities

Litigation Reform Act of 1995 ("PSLRA"). The movants also seek consolidation of the two

above-captioned lawsuits. Because the cases involve common questions of law and fact, the

Court will grant the parties' motions to consolidate. As set forth more fully below, because

Movant Darryl McCall has the largest financial interest and is entitled to a presumption favoring

the counsel of his choice, the Court will appoint Mr. McCall as lead plaintiff and his counsel,

Faruqi & Faruqi LLP and Finkelstein Thompson LLP, as lead and liaison counsel, respectively.

## II. FACTUAL BACKGROUND

Vanda Pharmaceuticals Inc. ("Vanda") is a biopharmaceutical company whose common

stock trades on the NASDAQ Global Stock Market under the ticker symbol VNDA. *See* Compl.

¶¶ 2, 16, ECF No. 1. Its focus is on the development and commercialization of drugs and

products for the treatment of disorders of the human central nervous system. *See id.* ¶ 2.

This litigation is centered on representations made by Vanda and its officers relating to

Tasimelteon, an oral compound currently in Vanda's product pipeline for treatment of Non-24-

Hour Disorder ("Non-24"). Non-24 is a rare circadian rhythm disorder that affects many totally

blind individuals. *See id.* ¶ 3. Because these individuals lack the ability to perceive light and

dark periods of day and thus process the periodic stimuli, their "internal clocks" are often not

synchronized to the "normal" 24-hour social cycle, whereby people sleep at night and wake

during the day. *See id.* ¶ 4. The goal of Tasimelteon is to treat Non-24 by aligning the brain's

wave and hormone rhythms to the normal 24-hour social day—a process known as

"entrainment." *See id.* ¶¶ 4–5.

According to the allegations contained in the complaint, Vanda and its officers issued

materially false or misleading statements about Tasimelteon's efficacy and the results of its

Phase III clinical trials. Specifically, it is alleged that Vanda (1) changed the design of the

primary Phase III study several times, including a complete replacement of the primary endpoint

one month before results were announced, because the company was in possession of data

suggesting that the original primary endpoint was not going to be met; (2) used a replacement primary endpoint that had never been used before in sleep-drug clinical trials and was not endorsed by the FDA; (3) enrolled patients in the Phase III trials by "stretching" the clinical definition of Non-24; and (4) combined data from two Phase III studies in order to demonstrate a benefit for Non-24 patients, where the two Phase III studies failed individually. *See id.* ¶¶ 6–7.

The complaint also alleges that on June 19, 2013, *TheStreet.com*, a financial news website, published an article raising doubts about the efficacy and quality of the trial procedure and test data for Tasimelteon and noted, among other things, the multiple changes in the primary endpoint over the course of the Phase III trials. *See id.* ¶ 8. That same day, Vanda shares declined more than 22 percent, closing at $8.51 per share. *See id.* ¶ 9.

On June 24, 2013, Plaintiff Jeff Small filed a putative class action complaint on behalf of all persons who purchased Vanda stock between December 18, 2012, and June 18, 2013, (the "Class Period") against Vanda; its President and Chief Executive Officer, Mihael H. Polymeropoulos; its Senior Vice President and Chief Financial Officer, James P. Kelly; and its Senior Vice President and Chief Medical Officer, Paolo Baroldi. *See generally* Compl. The complaint pleads securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2012), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (2013); and control person liability as to the individual defendants pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) (2012). On July 8, 2013, Plaintiff Tuan Hoang filed another putative class action complaint against Vanda, Mr. Polymeropoulos, and Mr. Kelly, containing similar allegations and covering the same Class Period. *See generally* Complaint, *Hoang v. Vanda Pharms. Inc.*, No. 13-cv-1028 (D.D.C. July 8, 2013), ECF No. 1.

On June 25, 2013, counsel for Mr. Small published via *Globe Newswire* a notice of the pending lawsuit that informed members of the putative class that they "have until August 24, 2013[,] to ask the Court to appoint [them] as Lead Plaintiff for the class." Lieberman Decl. Ex. A at 1, ECF No. 12-3; *see also* 15 U.S.C. § 78u-4(a)(3)(A)(i) (2012) (requiring such notice). Timely, competing motions for appointment as lead plaintiff were filed by Mr. Small and Movant Darryl McCall, who each also sought to have their respective attorneys appointed as lead counsel.[1] *See generally* McCall Mot., ECF No. 11; Small Mot., ECF No. 12. The parties also seek to consolidate the separate actions filed by Mr. Small and Mr. Hoang.

### III.  MOTION TO CONSOLIDATE CASES

Under the PSLRA framework, the Court is to first rule on any pending motions for consolidation before appointing a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (2012). The Federal Rules of Civil Procedure allow courts to consolidate actions where they involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a)(2); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (consolidating multiple class action securities fraud cases).

Consolidation in this case is uncontested, and for good reason. The two pending complaints both claim securities fraud under Section 10(b), Rule 10b-5, and Section 20(a); arising out of the same alleged misrepresentations relating to Tasimelteon and its Phase III clinical trials; on behalf of the same putative class; over the same class period. *See supra* Part II. These cases are well suited for consolidation, and the Court will grant the parties' motion.

---

[1] Mr. Hoang did not file a motion or any responsive brief, presumably because his counsel—who is the same counsel retained by Mr. McCall—determined that Mr. McCall holds a greater financial interest in this litigation. *Compare* McLellan Decl. Ex. B, ECF No. 11-3, *with* Plaintiff Certification ¶ 4, *Hoang v. Vanda Pharms. Inc.*, No. 13-cv-1028 (D.D.C. July 8, 2013), ECF No. 1-1.

## IV. MOTION TO APPOINT LEAD PLAINTIFF

### A. Legal Standard

The PSLRA establishes a framework for the appointment of a lead plaintiff in private class actions brought under the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78u-4(a)(3) (2012). Under the statute, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . ." *Id.* § 78u-4(a)(3)(B)(i). The PSLRA also requires that the Court adopt a presumption that the "most adequate plaintiff" is the person or group of persons that

> (aa) has either filed the complaint or made a motion in response to a notice [of the pending lawsuit];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I). The presumption may then be rebutted only upon "proof" that the presumptively most adequate plaintiff (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

Thus, the PSLRA creates a four-step process for the selection of a lead plaintiff: First, a plaintiff files a complaint and publicizes the pendency of the action, opening a 60-day window for members of the class to move for appointment as lead plaintiff. Second, the Court must apply the PSLRA presumption and identify the movant with the largest financial interest in the relief sought by the class. Third, the Court evaluates whether that movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. And finally, the Court gives

other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. *See generally In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 17–18 (D.D.C. 2006).

## B. Analysis

### 1. Timely Complaint or Motion

The Court first narrows the field of potential lead plaintiffs to those who have complied with the procedural requirements of the PSLRA. The PSLRA's selection process seeks to promote early appointment of a lead plaintiff. *See id.* at 17. Thus, "[t]he plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999); *accord In re XM*, 237 F.R.D. at 17; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) (limiting the presumption of "most adequate plaintiff" to those who have "either filed the complaint or made a motion in response to a notice").

By the time the 60-day window closed in this case, three individuals had come forward seeking to serve as lead plaintiff: Jeff Small, Darryl McCall, and Tuan Hoang. Each of these men filed the necessary complaint or motion. *See generally* Compl., ECF No. 1 (Small); McCall Mot., ECF No. 11 (McCall); Complaint, *Hoang v. Vanda Pharms. Inc.*, No. 13-cv-1028 (D.D.C. July 8, 2013), ECF No. 1 (Hoang). And each also timely filed the certification required by the PSLRA, attesting to, among other things, their transactions in Vanda securities during the class period and their willingness to serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(2)(A). *See generally* Lieberman Decl. Ex. B, ECF No. 12-4 (Small certification); McLellan Decl. Ex. B, ECF No. 11-3 (McCall certification); Plaintiff Certification ¶ 4, *Hoang v. Vanda Pharms. Inc.*,

No. 13-cv-1028 (D.D.C. July 8, 2013), ECF No. 1-1 (Hoang certification). The pool of eligible plaintiffs is thus limited to these three individuals.

## 2. Largest Financial Interest

The Court next considers which eligible plaintiff has the largest financial interest. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). "The PSLRA's presumption that the most adequate plaintiff is the one with the largest financial interest reflects Congress'[s] desire to curtail lawyer-driven securities class actions." *In re XM*, 237 F.R.D. at 17 (citing H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, 730). This is so, because the framers of the statute assumed that the plaintiff with the greatest stake "would be more likely to play an active role in directing and overseeing the litigation." *Id.* (citing *Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005)).[2] In determining which plaintiff has the largest financial interest, other judges in this district have considered three factors: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Id.* (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)).

Based on the evidence in the record, the Court concludes that Mr. McCall has the largest financial interest in this litigation. According to his certification, Mr. McCall purchased 49,500 shares of Vanda stock during the putative class period, expended $620,522.25, and suffered a loss of approximately $151,869.80. *See* McLellan Decl. Exs. B–C, ECF Nos. 11-3 to 11-4. By contrast, Mr. Small purchased 4,190 shares, expended approximately $45,811, and lost approximately $9,039; and Mr. Hoang purchased 4,690 shares, expended $50,558.48, and does

---

[2] The Court notes that, while the framers of the PSLRA expressed a clear preference that institutional investors serve as lead plaintiffs, *see* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, 733, no institutional investor has stepped forward in this case.

not provide a detailed accounting of his losses. *See* Lieberman Decl. Exs. B–C, ECF Nos. 12-4

to 12-5 (Small); Plaintiff Certification ¶ 4, *Hoang v. Vanda Pharms. Inc.*, No. 13-cv-1028

(D.D.C. July 8, 2013), ECF No. 1-1 (Hoang). The parties point to no reason—and the Court sees

none at this time—to doubt the accuracy of the figures provided in the plaintiff certifications.

Mr. McCall's *losses* alone are greater than even the *combined expenditures* of Messrs. Small and

Hoang during the putative class period. Thus, under all three factors considered by the Court,

Mr. McCall holds the largest financial stake in this litigation.

### 3. Typicality and Adequacy

The PSLRA requires that the Court next determine whether Mr. McCall satisfies the

requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C.

§ 78u-4(a)(3)(B)(iii)(I)(cc). "The inquiry does not differ from the one conducted in a Rule 23

analysis." *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (citing *In re

Cavanaugh*, 306 F.3d 726, 736 (9th Cir. 2002)). "It should be noted, however, that at this stage,

'the party moving for lead plaintiff of the consolidated action need only make a *preliminary*

showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *In re XM*, 237

F.R.D. at 18 (emphasis added) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296

(E.D.N.Y. 1998)). Significantly, although the Rule 23(a) analysis typically includes four

requirements—numerosity, commonality, typicality, and adequacy—only typicality and

adequacy are relevant to the presumptive lead plaintiff's prima facie showing under the PSLRA.

*See Reese v. Bahash*, 248 F.R.D. 58, 62 (D.D.C. 2008).

To meet the typicality requirement, a presumptive lead plaintiff "must demonstrate that

its claims arose out of the same course of conduct and are based on the same legal theory" as

those of the absent putative class members. *In re Fannie Mae*, 355 F. Supp. 2d at 263 (citing

*Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997)); *accord Reese*, 248 F.R.D. at 63.  Mr. McCall asserts that his claims are typical because he (1) purchased Vanda securities during the Class Period; (2) paid inflated prices as a result of Defendants' allegedly false or misleading statements; and (3) thereby suffered damages when the value of Vanda's stock declined.  *See* McCall Mot. 8, ECF No. 11.  No party has contested this assertion.  Mr. McCall's showing satisfies the typicality requirement in the securities fraud context, because it indicates that Mr. McCall's claims arise out of the same alleged fraud as those of the absent class members.  *See Plumbers Local #200 Pension Fund v. Wash. Post Co.*, 274 F.R.D. 33, 37 (D.D.C. 2011) (citing *Reese*, 248 F.R.D. at 63).

"The adequacy of a lead plaintiff is determined by considering whether the plaintiff 'has the ability and incentive to represent the claims of the class vigorously,' has retained 'adequate counsel,' and if there exists any 'conflict between [the movant's] claims and those asserted on behalf of the class.'"  *In re XM*, 237 F.R.D. at 18 (alteration in original) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)).  Mr. McCall's substantial financial stake provides an incentive for him to "vigorously" represent the claims of the class and, as discussed more fully below, *see infra* Part V, he has retained adequate counsel to represent the interests of the class. Moreover, there is no record evidence that his interests conflict with those of the other class members.  Therefore, the Court finds that Mr. McCall adequately represents the interests of the putative class.  *See also Reese*, 248 F.R.D. at 63 (finding that adequacy exists where a plaintiff has the largest financial interest, there is no evidence of conflict, and the plaintiff has selected qualified and competent counsel).

### 4. Unique Defenses

Finally, the Court allows the other plaintiffs to rebut the presumption that Mr. McCall is the most adequate lead plaintiff by providing "proof" that he (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No plaintiff has attempted to make such a showing, and the Court sees no evidence in the record (let alone the "proof" required by the PSLRA) to suggest that Mr. McCall will not fairly or adequately protect the interests of the putative class, or that he is subject to any unique defenses. Indeed, neither Mr. Small nor Mr. Hoang even filed a brief in opposition to Mr. McCall's motion for appointment as lead plaintiff.[3] The Court will therefore appoint Mr. McCall as lead plaintiff in this consolidated action.

## V. MOTION TO APPOINT LEAD COUNSEL

As noted above, Mr. McCall seeks to have his counsel of choice appointed as lead counsel in this consolidated action. "The PSLRA 'evidences a strong presumption in favor of approving a properly-[selected] lead plaintiff's decisions as to counsel selection and counsel retention.'" *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 21 (D.D.C. 2006) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(v) (2012) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). Mr. McCall has selected Faruqi & Faruqi LLP as lead counsel and Finkelstein Thompson LLP as liaison counsel. Both firms have substantial experience representing shareholder classes in securities fraud litigations. *See*

---

[3] Beyond the attachment of his certification to his complaint, Mr. Hoang filed no papers at all in support of his candidacy for lead plaintiff. *See supra* note 1.

*generally* McLellan Decl. Exs. D–E, ECF Nos. 11-5 to 11-6.  Given the lack of dispute regarding the firms' experience and qualifications, the Court will appoint Faruqi & Faruqi LLP and Finkelstein Thompson LLP as lead and liaison counsel, respectively.

## VI.  CONCLUSION

For the foregoing reasons, the Court will consolidate Civil Action Nos. 13-955 and 13-1028 under the common caption and case number *In re Vanda Pharmaceuticals Inc. Securities Litigation*, Civil Action No. 13-955.  The Court will appoint Movant Darryl McCall as lead plaintiff in the consolidated action and his counsel of choice as lead and liaison counsel. The Court will deny Plaintiff Jeff Small's motion for appointment as lead plaintiff and appointment of lead counsel.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 4, 2013                                              RUDOLPH CONTRERAS
                                                                                   United States District Judge